State *v.* Learned.

In a complaint that intoxicating liquors are kept at a certain place intended for sale contrary to law, it is sufficient to authorize the forfeiture of the liquors, if it be shown that they are there kept with such intent, although it is not alleged or proved by whom they are so intended for sale. But the person charged as thus keeping liquors cannot be convicted, unless it be alleged and proved that they were *by him* unlawfully deposited, or intended for sale in violation of law.

Although a complaint is in the form prescribed in statute of 1858, c. 48, and is therein declared to be " sufficient in law for all the cases arising under the aforesaid Act, (c. 33,) to which they purport to be adapted," yet, if it does not describe any offence punishable by c. 33, it cannot be sustained.

Whilst the Legislature has power to modify and simplify the forms of criminal process, it cannot make valid and sufficient a complaint or indictment in which the accusation is not "formally, fully and precisely set forth," so that the accused may know of what he is alleged to be guilty, and be prepared to meet the exact charge against him.

The form of complaint prescribed in c. 48, that intoxicating liquors are kept and deposited for unlawful sale, is not sufficient to authorize the conviction of the person having them in his keeping, without an allegation that they are intended *by him* for sale in this State in violation of law, or deposited and kept by him to be so sold by some other person, or with intent to aid or assist some person in the unlawful sale thereof.

THIS was a complaint against the defendant for having, on Jan. 15th, 1859, in his cellar in Industry, where then was his dwellinghouse in which he lived, since burned, " intoxicating liquors kept and deposited" by him, he not being authorized by law to sell said liquors, " and that said liquors then and there were intended for sale in this State in violation of law, against the peace," &c. There was evidence tending to show that the defendant had in his keeping certain intoxicating liquors, and other evidence tending to prove that he had never sold any of the liquors. The verdict was " guilty."

The defendant filed a motion in arrest of judgment, because, amongst other reasons, the complaint did not allege that the liquors were kept by the defendant *with intent* to sell them in this State in violation of law, or with intent that they should be so sold by any person, or to aid or assist any person in such sale.

State *v.* Learned.

*J. H. Webster*, with whom was *H. E. Dyer*, in support of the motion, argued the several points embraced therein; but, in the view taken by the Court, the case turned upon a single point.

The *County Attorney*, for the State.

The opinion of the Court was drawn up by

KENT, J.— The defendant, after conviction, moves in arrest of judgment, because, as he alleges, the complaint on which he was tried does not set forth any offence against the statute. He avers that he may have done all the acts specified in the complaint, and not necessarily have violated any provision of the law; and that no man can be compelled to answer to a charge involving a criminal offence until the same is fully and formally set forth. The complaint is based upon the Act of 1858, c. 33,—"for the suppression of drinking-houses and tippling shops." That statute contemplates several offences, and several distinct modes of proceeding against the offenders and the liquor, which is the subject matter of the enactment. It is an offence to manufacture it, except under certain restrictions. It is an offence to sell it, unless as a duly appointed agent. It is an offence to deposit it, or have it in possession, with intent to sell it within this State in violation of law, or with intent that the same shall be so sold by any person, or to aid and assist any person in such sale.

The statute further provides that such liquor kept and deposited may be proceeded against *in rem*, and upon due proof may be forfeited and confiscated.

It is important to observe that the statute, by section 12, and several sections next following, provides for a union of two prosecutions in one process, viz., a process *in rem* against the liquors, and a charge of an offence against the person in whose keeping they are found. The liquors must be libelled, and notice must be given to all persons to intervene by claim, if they see fit. The right to claim, or to con-

test on the question of forfeiture of the liquors, is not confined to the person named in the complaint. This right may be claimed by any and all persons who duly become parties.

But the charge in the original complaint of a personal nature, involving an accusation against the individual named, can only be made against the person who is declared to be the keeper or depositor, with the unlawful intent; and can only be sustained by proof that the liquors were found in his possession or deposit, and that he kept them *with the unlawful intent* named in the 12th section.

The two processes thus united seem to be, in many respects, distinct. The portion that relates to the forfeiture may be prosecuted to final judgment, although the *person* charged may be acquitted. The ground of *forfeiture of the liquors* is, that they are intended for unlawful sale in this State, by some person named or not named, known or unknown. If there is sufficient evidence that the liquors are intended for unlawful sale in the State, it is not necessary to prove by whom, or by what individual the sale is intended.

But the *person* charged as thus keeping liquors cannot be convicted simply from the fact that the liquors are found in his possession, or that they were intended for unlawful sale by somebody. He may be an innocent depositary. He can only be a guilty one, under this statute, by having this possession *with an intent on his part* to sell the same in this State in violation of law, or with the intent that the same should be *so* sold by any person, or with intent to aid or assist any person in such unlawful sale; the *intent* being, under section 12, an essential element, in either case, in the offence charged against the individual.

The first question before us is whether any such offence is set forth in this complaint. It charges that, at a certain time and place, "intoxicating liquors were and still are kept and deposited by the respondent in a certain place or places; that he was not authorized by law to sell said liquors in the places specified; that said liquors then and there were and now are intended for sale in this State, in violation of law."

State *v.* Learned.

It will be observed that it is not alleged, as required by § 14, that the liquors are "*unlawfully* kept or deposited." The word "unlawfully," which is a most important word in defining an offence, is omitted in this complaint. If this word had been inserted, it might, perhaps, have been sufficient to charge the defendant, as his keeping could only be unlawful when accompanied by the intent to sell, or to aid in selling.

There is no allegation that the possession was such as rendered it unlawful. It might have been free from any just imputation of any design to sell, or to aid in selling. Mere possession of intoxicating liquors is no legal crime or offence against the statute. It is true, that it is alleged that the liquors were intended for unlawful sale in this State. But *by whom* intended? It is not charged that *the defendant* had such intention. This allegation may be sufficient to justify proceedings *in rem* against the liquors; but it does not charge the person in possession with any offence. It is not a crime in any one to be in possession of liquors, even if another person may intend to sell them unlawfully, if the depositary had no such intention himself, and no intent that they should be so sold by any person, or to aid in such selling.

The defendant might be justly chargeable with all that is set out, and yet not be guilty of any of the offences described in the statute.

There may be some confusion introduced in construing these provisions, if we do not keep constantly in mind the fact that the charge against the liquor, and the charge against the individual,— or the charge *in rem* and the charge *in personam,*— are distinct and independent. The offence of the individual is set forth in section 12, and consists, as before shown, of an act and an intent. The *act* is a depositing or keeping intoxicating liquors by the person named; the *intent* is a purpose on his part to sell, or that some other person should sell, or to aid in selling the same liquors in violation of law. This section 12 does not say that it shall be an offence in an individual to deposit or keep liquors *intended* for unlawful sale in this State; but it must be *with an intent* on his part so to

sell, &c. If the word "intended" had been used in the 12th section unqualified, it might have been urged with some plausibility, at least, that the offence by the person was consummated, by proof of an intention by any one to sell unlawfully, however innocent the depositary may have been. But it might, even in that case, have been doubted whether the Legislature could have intended to punish, as a criminal, a man who had been innocent of any intent to do wrong, or to aid any one in violating the law. It was said in an early case in this State, by C. J. MELLEN, (*Sanford* v. *Emery*, 2 Greenl., 5,) " that, although the statute is silent as to the *motive* with which a person may carry a pauper into a town in which he has not a legal settlement, and there leave him; still, the *unlawfulness of the intention* is the essence of *the act*, and gives it the character of an offence against the statute." This is the principle that lies at the foundation of all just penal and criminal codes.

The Legislature, that enacted the law now in question, was careful to avoid even the imputation of an intended violation of this great principle of right and justice. In their desire to suppress or prevent what they deemed grievous evils and public nuisances, and corrupting practices, they were not unmindful of the rights of the citizen, but carefully distinguished between what might constitute a ground for forfeiture of the *offending thing*, and what might be a crime in *a person* in possession of it. They, therefore, most significantly changed the form of expression, from "with intent," in the 12th section, to "intended," in the 13th. The first of these sections applying solely to the offence of the individual, the other to the *offence of the liquors*, if that which causes so many offences in others may be itself denominated an offender.

The liquor itself, however, if an offender, cannot have a will, purpose or intent. It is enough, if any person has an intent to sell it unlawfully. If it is "intended" for unlawful sale, whether by the person named or any other person, it may be forfeited; and, as against the liquor, this complaint may be sufficient. The magistrate, by the subsequent sections,

is, in relation to the liquor, to determine whether it was kept and deposited for unlawful sale. But, in reference to the charge against the individuals, § 14, he is to determine if the said liquors were, or not, deposited and intended for unlawful sale *by the person or persons* named in the complaint. Can a magistrate convict "the person or persons," and sentence them for depositing or keeping *with intent,* when no such intent is alleged against him or them? To illustrate the points involved in this case, suppose that A comes to B, who keeps a storehouse, in which various persons deposit goods, and A says, "I have three barrels of vinegar, which I wish you to keep on deposit for me a week, or until I call for them." B takes them, and deposits them in his cellar. They are marked "Vinegar," and have every appearance of containing that article; and it is proved, beyond doubt, that B really believed them to be filled with vinegar. In fact, they contained intoxicating liquors, which A intended to sell in this State, in violation of law, and he deposited them with B, to conceal them from the officers of the law. A process is issued, charging exactly as this complaint does, that intoxicating liquors were, and still are, kept and deposited by B, in a place described. This fact is unquestioned. It is then alleged that said liquors then and there were, and now are, intended for sale in this State, in violation of law. This fact is unquestionable and clearly proved, that *A* did thus intend. Now, under such a complaint and such facts proved, could *B* be convicted? Would the record show any statute offence?

It is no answer, to say that B might show his innocence. No man is bound to prove innocence until a crime, in all its essential particulars, is distinctly charged, and, at least, made out *prima facie* against him. How would it be on demurrer? Might not the accused safely admit all that is charged in this complaint, and yet successfully contend that no statute offence is set out?

But it is urged that this complaint is in the form set forth in chap. 48, of the laws of 1858. Upon inspection, such appears to be the fact. That statute provides that "the

forms," set forth in that Act, "shall be deemed sufficient in law for all the cases arising under the aforesaid Act, (c. 33,) to which they purport to be adapted."

The defendant, admitting that this complaint is in the form set out in the Act, denies the right of the Legislature to prescribe a form which, in fact, charges no crime, and holds the accused bound to answer to such a charge, and liable to be convicted upon proof of matters not alleged.

We do not doubt the power and right of the Legislature to prescribe, change or modify the forms of process and proceedings in all civil actions, and to determine what shall be deemed a sufficient allegation, in form or substance, to bring the merits of a case before the Court. But, in criminal prosecutions, the exercise of this right is limited and controlled by the paramount law in the Constitution. It has for centuries, since the declaration in *Magna Charta,* been the boast of the common law, that it protects with jealous care the rights of the accused. It not only secures a speedy and impartial trial by jury, but it requires that no person shall be held to answer, until the accusation against him is formally, fully and precisely set forth,—that he may know of what he is accused, and be prepared to meet the exact charge against him. This right of the respondent has ever been regarded as sacred and essential to the protection of the individual citizen. In all the changes of forms, and in the principles and practice of the law, this right has remained untouched and unchanged. The people have not been willing to leave it without the express sanction of the Constitution. In the Declaration of Rights, it is set down as one of the rights of the accused, "in all criminal prosecutions, to have a right to demand the nature and cause of the accusation, and have a copy thereof; and that he shall not be deprived of his life, liberty, property or privileges, but by the judgment of his peers, or the laws of the land." Or, as it is expressed in the Constitution of the United States, "without due process of law." This "law of the land" is not simply the existing statute law of the State, but, as has been often decided, it is

the right of trial according to the process and proceedings of the common law.

" By the process and proceedings of the common law, the accused has the right to know the charge in the whole form and substance against him, to contest it, and, if not proved to the satisfaction of a jury, to demand an acquittal." *Saco v. Wentworth,* 37 Maine, 172. Will any one maintain that the Legislature might dispense with a *written* accusation, or enact that any written charge, however vague or indefinite in its terms, should be sufficient ? That, for instance, a general charge, that the accused had violated the law, should be sufficient to hold a man to answer to any crime, from a simple assault to murder ?

We do not intend to say that the Legislature may not modify or simplify the forms in criminal proceedings, provided the essential matters which clearly set forth an offence, and which, being proved, constitute the offence, are retained. The case before us does not require us to determine how far the Legislature may go in substituting a general description of an offence for minute specifications. What we do decide is, that the Legislature cannot dispense with the requirement of a distinct presentation of an offence against the law. It cannot compel an accused person to answer to a complaint which contains no charge, either general or particular, of any offence.

The form, and this complaint which follows it, it will be observed, does not make a general charge of a violation of a particular statute, or a particular section, but undertakes to charge specifically all the acts complained of. These acts, as we have shown, do not constitute any offence in the person charged.

Is it not most clearly a violation of the rights of the individual, under the Constitution, to compel him to answer, under this complaint, for matters not specified, and to suffer punishment for acts never presented, either generally or specifically, in any written accusation, or in any record ? It would present the absurd record of a case where a person is *sen-*

*tenced to punishment for matters which the record itself shows are no offence against the law.*

Useless forms, and redundant expressions, and minute specifications, may, doubtless, be dispensed with. But the essential rights of the citizen would be impaired, if men could be tried and sentenced for matters not set out clearly and distinctly on the record. It is a right belonging to the humblest to meet his accuser face to face, and to know that whereof he is accused. If, to effect what is deemed a desirable end, the salutary, and protective, and long established doctrines of our laws may be dispensed with, the precedent may be drawn in to sanction, at some other time, the usurpations of tyranny, or the punishment of innocent men, obnoxious to the ruling powers,—and who, could only be convicted by an arbitrary and complying Court, disregarding or overruling the requirenents of law in this matter of distinct allegation of all material charges. It is not matter of form, but matter of substance, that is in question. No matter, that it is essential to set forth to show that an offence has been committed, can be mere matter of form. When our Legislature, some years since, enacted that motions in arrest of judgment should not be entertained, they were very careful to confine the provision in terms to "*civil* actions;" thus plainly indicating that no relaxation of the protective rules that had long existed in criminal cases was to be allowed.

We cannot believe that the Legislature, in enacting the form in question in this case, intended to dispense with any essential allegation, or designedly to infringe the constitutional right of the accused. We have no doubt that, in their desire to simplify and condense the forms, they unintentionally omitted the few words which are necessary to set forth the offence.— That this was an unintentional omission is manifest by reference to the forms next following this, of the warrant, based on the complaint, and the recognizance. In both these forms the allegation is distinctly made of an *intent* on the part of the person named, to sell the liquors. But in the form of the libel, *in rem*, against the liquors, the allegation is general

that they were " intended for sale," not naming any particular person as having this intent.

The statute, (c. 48,) does not require the use of these forms; it simply provides them, to be used if preferred. The insertion, into the form as it now stands, of a distinct allegation that the liquors are unlawfully kept and deposited by the person named, and that they are intended *by him* for sale in this State, in violation of law, or with intent that the same shall be so sold by any person, or to aid or assist any person in such sale thereof, (as the case may be) would probably render the complaint sufficient. Perhaps the omission of the words " are unlawfully" kept, would not be fatal, if the acts charged distinctly made out a case within the statute.

*The exceptions must be sustained, and*

*Judgment arrested.*

TENNEY, C. J., and RICE, GOODENOW, and DAVIS, JJ., concurred.